**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**ALAIN GILBERT RWABUKAMBA,**

Plaintiff,

v.

**INTEL CORPORATION, *et al.*,**

Defendants.

Case No. 26-cv-1400-SI

**ORDER**

**Michael H. Simon, District Judge.**

Plaintiff Alain Gilbert Rwabukamba, representing himself, sued Defendants Intel Corporation ("Intel"), Richard Kacprowicz ("Kacprowicz"), Matthew Brian Pendergast Pedersen ("Pedersen"), and Eric Lin ("Lin") on July 9, 2026. On August 14, 2026, Defendants Intel, Pedersen, and Lin filed a motion to dismiss the Complaint for failure to state a claim, which was rendered moot by Plaintiff's First Amended Complaint ("FAC"), filed August 24, 2026. Before the Court is a motion to dismiss counts I, II, III, VII, VIII, and portions of count V of the FAC for failure to state a claim, filed by all Defendants.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in *Garity*) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### A. Incorporation by Reference

As a preliminary matter, the Court addresses Defendants' request that the Court consider, in resolving the pending motion, the contents of four documents attached to their motion to dismiss: the Separation and Release Agreement ("SARA"), the Workday electronic signature record ("Signature Record"), the U.S. CPM Separation Program Package ("SPP"), and a paystub from Intel dated August 15, 2025 ("Paystub"). "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)

of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

Incorporation-by-reference, "a judicially created doctrine that treats certain documents as though they are part of the complaint itself," is an exception to this rule. *Id.* at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those documents that weaken—or doom—their claims." *Id.* A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja*, 899 F.3d at 1002.

A document is central to or forms the basis of a complaint if the complaint "necessarily relies" on it. *Ecological Rts. Found. v. Pacific Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Thus, a document satisfies this type of incorporation-by-reference if "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**1. SARA and SPP**

Regarding the SARA, the FAC acknowledges that "Plaintiff signed the Separation and Release Agreement at approximately 12:05 p.m. on July 31, 2025." FAC ¶ 49. The FAC also references the substantive content of the SARA, *see id.* ¶ 52 ("[T]he SARA recited a forty-five day review period . . . ."), and makes legal arguments as to why "[t]he SARA does not bar

Plaintiff's claims." *Id.* ¶ 50. The Court finds these references extensive enough to incorporate the SARA by reference into the FAC.

Additionally, the SARA forms the basis of Plaintiff's claims and thus incorporation by reference is appropriate on that ground, as well. The FAC "acknowledges that the viability of [Plaintiff's] claims depends on the contents of the [SARA]." *Estate of Farver v. LTF Club Ops. Co.*, 2026 WL 2621027, at *2 (D. Nev. Sep. 3, 2026) (applying the incorporation-by-reference doctrine to an assumption-of-risk and liability-waiver agreement). Plaintiff also has not challenged the authenticity of the SARA. Therefore, the Court will consider the SARA in evaluating the motion to dismiss. *See Marder*, 450 F.3d at 448 (concluding that a release agreement was "central to [the plaintiff's] claim" even where it was referenced only once in the plaintiff's complaint).

The SARA, in turn, specifically and extensively references the SPP. *See, e.g.*, SARA ¶ 2 (Decl. of Menachem Wecksler, Ex. 1., ECF 10-1) ("Intel will issue a lump sum payment . . . and certain other pay and benefits . . . according to your eligibility as outlined in the [SPP]. . . . Additional details regarding these payments and benefits can be found in the [SPP] provided to you with this Agreement."); *id.* ¶ 3 ("In exchange for your promises in this Agreement, and subject to the other provisions of the Agreement and the [SPP], you will receive certain pay and benefits as described in the [SPP]"). Therefore, the Court may also consider the SPP—the authenticity of which Plaintiff has not contested—because the SPP is incorporated by reference into the SARA. *See* Williston on Contracts § 30:25 ("When a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument.").

**2. Paystub**

The Court finds that the Paystub, which reflects a gross payment of $71,690.02 and net payment of $43,349.24 on August 15, 2025, is appropriately considered under the doctrine of incorporation-by-reference. Plaintiff's final paystub is referenced in the FAC: "Defendant's payroll records reflect two direct deposits to Plaintiff after his termination: approximately $3,784.56 on July 31, 2025, consistent with a final paycheck, and a separate payment of approximately $43,349.24 on August 15, 2025." FAC ¶ 60. This reference appears to have been made in support of Plaintiff's theory that the SARA is void for lack of consideration. *See* FAC ¶¶ 48, 51, 54, 58. As explained above, Plaintiff's FAC recognizes that many of his claims rise or fall depending on the enforceability of the SARA. The Paystub, therefore, can be fairly viewed as "central" to Plaintiff's claim.[1]

**3. Signature Record**

Plaintiff has disputed the authenticity of the Signature Record. Therefore, that document is not appropriate for incorporation by reference. The Court notes, however, that Plaintiff has

[1] Plaintiff argues that the Court should not consider the SPP and the Final Paystub because they are "offered for the truth of a disputed allocation" and constitute "quintessential merits use of extrinsic evidence." Plaintiff requests that the Court not "weigh Defendants' exhibits for the truth of what they assert" without first converting Defendants' motion to dismiss into one for summary judgment. The Court disagrees. In accordance with Ninth Circuit precedent, the Court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)," except when "such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (alterations in original). As such, the Court will not draw inferences or take notice of facts in the incorporated documents that dispute Plaintiff's well-pleaded facts. *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 n.1 (9th Cir. 2008) (considering disability benefits plan documents incorporated by referenced into the complaint, but declining to accept the contents for their truth where there was a dispute between the parties over whether the plan documents were implemented according to their terms).

admitted he signed the SARA. FAC ¶ 49 ("Plaintiff signed the Separation and Release Agreement at approximately 12:05 p.m. on July 31, 2025.").

**B. Effect of the SARA**

Defendants argue that the SARA releases all of Plaintiff's "pre-release" claims—in other words, those claims that arose on or before July 31, 2025, when Plaintiff signed the SARA and was terminated from his position at Intel. According to Defendants, counts I, II, III, VII and VIII all rely exclusively on pre-release conduct, and therefore should be dismissed as to all Defendants. As for count V, Defendants concede that Plaintiff relies on both pre- and post-release conduct, and therefore request dismissal only as to those portions of count V relying on pre-release conduct.

Plaintiff admits he signed the SARA and has not disputed that the agreement, if enforceable, bars his pre-release claims. Plaintiff argues instead that there are disputed questions of material fact as to the enforceability of the waiver, specifically: (1) whether the release was knowing and voluntary, (2) whether Plaintiff's assent to the SARA was fraudulently induced, and (3) whether the SARA was supported by consideration or constitutes a valid accord and satisfaction.

The release in the SARA states:

> In exchange for the pay and benefits you will receive pursuant to this Agreement, you release Intel, including its subsidiaries, affiliates, successors, and all of its and their past and present directors, officers, and employees (collectively "Releasees") from all claims of any kind related to your employment or separation from employment, whether known or unknown, which arose on or before the day you signed this Agreement, except claims that cannot lawfully be waived.

SARA ¶ 4. The Court agrees that the SARA, if enforceable, bars Plaintiffs' claims related to pre-release conduct, which includes counts I, II, III, VII, VIII and portions of count V. Therefore, the Court considers the enforceability of the SARA under federal and Oregon law.[2]

**1. Knowing and Voluntary**

Plaintiff offers the following allegations in support of his argument that his waiver under the SARA was not "knowing and voluntary": (1) Defendant Lin made a comment that "it is a small world" when he delivered Plaintiff's separation notification; (2) Plaintiff felt pressured to sign the SARA on his last day of employment; (3) Plaintiff lacked a meaningful opportunity to consult counsel, and (4) Plaintiff had no role in negotiating any term of the release.

In *Stroman v. W. Coast Grocery Co.*, the Ninth Circuit prescribes a totality-of-the-circumstances approach to determining whether a waiver is knowing and voluntary. 884 F.2d 458, 462 (9th Cir. 1989). Under this approach, the primary indicia are "[1] the clarity and lack of ambiguity of the agreement, [2] the plaintiff's education and business experience, [3] the presence of a noncoercive atmosphere for the execution of the release, and [4] whether the employee had the benefit of legal counsel." *Id.* (cleaned up).

Regarding the first factor, the Court finds that the release in Paragraph 4, set forth above, is clear and unambiguous. This weighs toward a finding that the waiver was knowing and voluntary.

[2] The principles of state contract law generally govern the interpretation and validity of settlement agreements. *See Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993); *Hisel v. Upchurch*, 797 F. Supp. 1509, 1517 (D. Ariz. 1992). However, "conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law." *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981). Because Plaintiff makes claims under both state and federal law, the Court considers both in evaluating the enforceability of the SARA.

Considering the second factor, Plaintiff's FAC pleads that by the time he started at Intel, he "held a B.S. in Electrical Engineering with a minor in Mathematics and an M.S. in Computer Engineering," and had ten years of work experience as an engineer. Regardless of whether Plaintiff had a say in the terms of the SARA, the SARA's clear text and Plaintiff's relative level of sophistication weigh toward a finding that Plaintiff understood the consequences of assenting to the SARA. *See Stroman*, 884 F.2d at 462-63 (explaining that the plaintiff, while not a "sophisticated businessman," had work and education experience that rendered him capable of understanding the "unambiguous[]" language of the release agreement).

For the third and fourth factors, Plaintiff's allegations do not plausibly suggest the presence of a coercive atmosphere or duress, or that Plaintiff's failure to consult with an attorney is attributable to any acts or omissions of Defendants. *See id*. at 463 ("Although [the plaintiff] did not have an attorney read the [release agreement] before signing it, there is no evidence indicating that [the plaintiff] was discouraged or precluded from doing so."). The SARA explicitly provided Plaintiff with 45 days following receipt of the agreement to decide whether to sign the agreement, and provided that he "may use as much or as little of this 45-day period as you wish before signing." *See* SARA ¶ 11; *see also id.* ¶ 9 ("You have been advised in writing by this Agreement to consult with an attorney before signing it and have had an adequate opportunity to do so."). Although the SARA provided that recipients who wished to sign the SARA "*before* exiting Intel . . . must do so on or as near as possible to [their] Separation date," Plaintiff remained free to sign the agreement *after* his termination, so long as he did so within 45-days of his initial receipt of the SARA. *Id.* ¶ 11 (emphasis added). Plaintiff's suggestion that various "circumstances of [the SARA's] presentation and administration caused

Plaintiff to understand that execution was expected" before termination is not plausible in light of the clear and unambiguous text of Paragraph 11 of the SARA.

Plaintiff's FAC alleges that Defendant Lin "delivered Plaintiff's separation notification in a private meeting at which no human resources representative was present. During that meeting, Lin allegedly stated to Plaintiff that it is a small world." FAC ¶ 47. Plaintiff asserts that he "reasonably understood" this statement "as a warning about the consequences to his professional future of asserting his rights." *Id.* ¶ 52. This comment does not plausibly create a dispute over whether there was a "[coercive] atmosphere for the execution of the release" for at least two reasons. *Stroman*, 884 F.2d at 462.

First, Plaintiff's FAC alleges that the comment was made when Plaintiff was notified of his separation, FAC ¶ 47, which the FAC indicates was on or before July 8, 2025, FAC ¶ 53, several weeks before Plaintiff actually executed the SARA. *Id.* ¶ 49. *See Jones*, 648 F.2d at 1205 (explaining that a coercive atmosphere may "dissipate" when the signatory has the opportunity "to consider the consequences of his actions in a neutral environment"). Second, even if the comment was made at the time of execution, Plaintiff cites no case law suggesting that a standalone comment like that allegedly made by Defendant Lin rises to the level of "coercion" or "duress." *See Hisel*, 797 F. Supp. at 1527 (finding no coercive environment where prisoner executed settlement agreement in prison after being told by prosecutor that he risked transfer to a prison in a state other than his preferred state of Washington if he refused to sign the agreement). Even if Defendant Lin's comment could be viewed as somewhat coercive, the Court finds that, considering the totality of the circumstances, Plaintiff's waiver was made knowingly and voluntarily.

**2. Fraudulent Inducement**

Plaintiff argues that the SARA is invalid because his consent was "fraudulently induced" under *Gardner v. Meiling*, 280 Or. 665 (1977). Under *Gardner*, the elements of a claim for fraudulent inducement consist of:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon, (6) the injured party's ignorance of its falsity, (7) his reliance upon the truth of the representation, and (8) his right to rely on its truth.

*Id.* at 671.

Plaintiff contends that Intel's misrepresentation was contained in a July 9, 2025 email from an Intel employee stating that "Intel has triggered the WARN Act in Oregon and Intel is fully compliant with the WARN Act requirements." Plaintiff asserts that this representation was false because Intel's July 8, 2025 WARN filing omitted reference to Plaintiff's specific position until it was revised on August 25, 2025, meaning that Intel could not have been "fully compliant" with the WARN Act requirements as of July 9, 2025.

Even assuming that the other elements of fraudulent misrepresentation are met, Plaintiff has failed plausibly to allege that any misrepresentation was material. "A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person." *Millikin v. Green*, 283 Or. 283, 285 (1978). Even construing the FAC's allegations in the light most favorable to Plaintiff, he has alleged nothing more than a missed filing deadline, resulting in a reporting error that was rectified the following month. Disclosure of this error would not be "likely to affect the conduct of a reasonable man" with reference to a decision of whether to sign the SARA. Therefore, Plaintiff has failed adequately to allege the materiality of any alleged misrepresentation fraudulently made by Defendant Intel.

### 3. Consideration

A valid release must be supported by consideration. Plaintiff argues that there was no consideration for the release because Defendants represented that "approximately nine weeks of severance pay would be paid regardless of whether [Plaintiff] signed." FAC ¶ 54. The SARA, however, stipulates that *in addition to* the nine weeks pay required by the WARN Act, signatories to the SARA receive the pay and benefits described in the SPP "[i]n exchange for [their] promises in th[e] Agreement." SARA ¶ 2, 3; *see also id.* ¶ 8 ("You acknowledge and agree that . . . The value of the pay and other benefits referenced in Section 3 above and described in the [SPP] exceed in value any other pay and benefits you may be owed by Intel apart from this Agreement."). The SPP provides that although a signed SARA is "[n]ot required" to receive nine weeks of pay representing "Pay in lieu of time in Redeployment," it is required to receive "Separation Pay," which has a specific calculation. Decl. of Menachem Wecksler ("Wecksler Decl."), Ex. 2 (ECF 12 at 4).

Additionally, Plaintiff's Paystub shows that Plaintiff received a gross payment of "71,690.02," characterized as "Separation Pay" following his termination. Wecksler Decl., Ex. 4 (ECF 10-1 at 8). Plaintiff argues that whether this figure "was in fact the conditional Separation Pay, calculated at what rate, under which plan terms, is not established by the pleadings" and "is a merits question for discovery." However, Defendants have represented that the gross payment of $71,690.02 reflects "both the unconditional nine weeks and the conditional thirteen weeks of Separation Pay," ECF 20 at 12, and the Court finds this explanation to be consistent with both the Final Paycheck and the SPP (which, as established, are each appropriate for consideration

under the doctrine of incorporation-by-reference). Therefore, the Court finds that Plaintiff has not plausibly alleged that he was not provided the benefits promised in the SARA.[3]

In conclusion, the Court finds that the SARA is valid and enforceable as a bar to Plaintiff's claims seeking damages related to pre-release conduct. Because the Court agrees that the SARA bars counts II and VII against all Defendants, the Court need not address Defendants' arguments that those claims are independently barred against Defendant Kacprowicz by the statute of limitations.

## CONCLUSION

The Court GRANTS Defendants' partial motion to dismiss for failure to state a claim. ECF 20. Counts I, II, III, VII, and VIII of Plaintiff's First Amended Complaint, ECF 15, as well as to those portions of count V seeking damages for pre-release conduct, are dismissed.

**IT IS SO ORDERED.**

DATED this 16th day of October, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

[3] Defendants argue that even if Plaintiff did not receive amounts under the SARA, the SARA would still be a valid accord and satisfaction. They also argue that Plaintiff affirmed the contract and lost any right he had to rescind it by retaining the severance payments he received. Because the Court finds that the SARA was supported by consideration and is otherwise valid and enforceable, it need not address these arguments.